## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

08/28/2017, 10:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Catherine M. Brownson
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of L.R. (Minor Child)

and

T.S. (Mother)

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

August 28, 2017

Court of Appeals Case No.
29A02-1704-JT-846

Appeal from the Hamilton Superior Court

The Honorable Steven R. Nation, Judge

Trial Court Cause No.
29D01-1607-JT-855

**Bailey, Judge.**

# Case Summary

[1] T.S. ("Mother") appeals the termination of her parental rights upon the petition of the Hamilton County Department of Child Services ("DCS"). Mother raises the sole restated issue of whether there was sufficient evidence to terminate her parental rights.

[2] We affirm.

# Facts and Procedural History

[3] Mother and C.R. ("Father")[1] had a son, L.R. ("Child"), who was born in California on January 16, 2014. When Child was six weeks old, Mother was arrested on a charge of burglary. Mother was convicted of the offense, which she committed while six months pregnant with Child, and began serving a term of imprisonment in California. At some point while Mother was incarcerated, Father and Child moved to Indiana.

[4] In December 2014, when Child was eleven months old, DCS received a report alleging that Father had physically abused Child. After substantiating the allegations, DCS removed Child from Father's home and filed a Child in Need of Services ("CHINS") petition on December 30, 2014. At the time, Mother remained incarcerated. A few months later, Mother was released to parole,

---

[1] Father consented to the termination of his parental rights and does not participate in this appeal.

which meant she could not leave California without permission. While on parole, Mother requested that Child be placed with her in California.

[5] Following a fact-finding hearing on November 4, 2015, the trial court adjudicated Child a CHINS. The trial court also held a hearing concerning Mother's request to place Child in California, which it denied. In denying Mother's request, the trial court determined that placement with Mother was not in Child's best interest at the time. The trial court specifically cited a lack of pertinent information about Mother's background and ability to care for Child.

[6] On December 11, 2015, a dispositional hearing was held, and the trial court subsequently ordered Mother to participate in services. Among the ordered services, Mother was to complete a parenting assessment and follow all recommendations. Mother was also to attend all scheduled visitations with Child and maintain weekly contact with the Family Case Manager ("FCM").

[7] To facilitate reunification efforts, DCS explored the possibility of placing Child with Mother in California by taking steps pursuant to an interstate compact. However, Mother was denied the opportunity for interstate placement due to her extensive criminal history, which includes a conviction for child cruelty.

[8] Mother completed the court-ordered parenting assessment, after which it was recommended that she participate in weekly video calls with Child. To arrange a call, Mother was to contact Child's foster parents, who were flexible about planning calls at times convenient to Mother. Over the ensuing months, Mother participated in nine out of twenty-five potential video calls with Child,

missing opportunities because she did not schedule a call, cancelled without rescheduling, or did not answer at the planned time. During this time, Mother also failed to maintain contact with DCS.

[9] A permanency hearing was held on June 3, 2016, after which the trial court discontinued services due to Mother's inconsistent participation. The trial court also changed the permanency plan to termination of the parent-child relationship and adoption. Mother later filed a motion to modify the plan and reinstate visitation, and the trial court scheduled a hearing on her motion. The trial court twice rescheduled the hearing at Mother's request, and when Mother failed to appear at the eventual hearing, her motion was withdrawn.

[10] On July 13, 2016, DCS filed a petition to terminate Mother's parental rights. A permanency hearing was held on December 27, 2016, when Child was almost three years old, at which Mother appeared telephonically. After the hearing, the trial court entered an order terminating Mother's parental rights.

[11] This appeal ensued.

# Discussion and Decision

[12] A petition to terminate parental rights must contain certain allegations that DCS must then prove by clear and convincing evidence. *See* Ind. Code §§ 31-35-2-4(b)(2), 31-37-14-2. If the trial court finds that those allegations are true, then it is obligated to terminate the parent-child relationship. *See* I.C. § 31-35-2-8(a). One such allegation is that "termination is in the best interests of the

child." I.C. § 31-35-2-4(b)(2)(C). Here, Mother limits her argument to whether DCS presented sufficient evidence to support this allegation.

[13] In determining whether it is in the best interests of a child, the trial court is required to look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). "In so doing, the trial court must subordinate the interests of the parents to those of the child[]." *Id.* Moreover, "[t]he trial court need not wait until a child is irreversibly harmed before terminating the parent-child relationship." *Id.*

[14] We will set aside the judgment of the trial court only if it is clearly erroneous. Ind. Trial Rule 52(A). In reviewing for clear error, we apply a two-tiered standard of review—that is, we evaluate "whether the evidence clearly and convincingly supports the findings" and whether "the findings clearly and convincingly support the judgment."[2] *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010) (harmonizing the requirements of Trial Rule 52(A) and Indiana Code section 31-37-14-2). In conducting our review, "we do not reweigh the evidence or judge witness credibility." *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).

---

[2] Pursuant to Indiana Code section 31-35-2-8(c), a trial court must enter findings and conclusions when terminating a parent-child relationship.

[15] As an initial matter, Mother asks that we disregard certain evidence in our sufficiency determination and directs us to certain testimony that she contends was erroneously admitted. That testimony—to which Mother raised a hearsay objection—related to the intervention of California child services with respect to a different child of Mother's. Yet, Mother did not enter a continuing objection and did not object when a different witness later testified that Mother's daughter was "in and out of the system in California," Tr. Vol. II at 39, and that the final time child services was involved, the daughter "aged out" of the system without Mother regaining custody. Tr. Vol. II at 43-44. Moreover, the underlying CHINS record was admitted without objection, and that record contains references to Mother's child-services history in California.

[16] Thus, despite Mother's objection to certain testimony, Mother did not preserve a claim of error concerning the admission of cumulative evidence. *See Bogner v. Bogner*, 29 N.E.3d 733, 740 (Ind. 2015) (acknowledging "the general principle that objections not contemporaneously raised are waived"). Therefore, even if the trial court erred in admitting the specific testimony to which Mother objected, any error would be harmless. *See* T.R. 61 (directing courts to disregard harmless error); *see also Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 135 (Ind. 2005) ("Error in the admission of evidence may be harmless when the evidence is merely cumulative of other properly admitted evidence").

[17] Nevertheless, even if we were to disregard Mother's child-services history, the judgment of the trial court is supported by clear and convincing evidence. It is undisputed that Mother's criminal actions led to her incarceration when Child

was six weeks old. We acknowledge that Mother made laudable progress after serving her sentence, including obtaining employment and a promotion to a managerial role. Mother also participated in the ordered parenting assessment and availed herself of all opportunities to visit Child during a two-week trip to Indiana. However, despite several positive changes in Mother's life, Mother chose not to consistently develop a relationship with Child—Mother took advantage of fewer than half of her ongoing opportunities to interact with Child. *See Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) ("[T]he failure to exercise the right to visit one's children demonstrates a 'lack of commitment to complete the actions necessary to preserve [the] parent-child relationship.'" (quoting *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002))), *trans. denied*.

[18] At the hearing, Mother claimed that she did not attend weekly video calls with Child because of her work schedule, but there was contradictory testimony that Mother had great flexibility in the timing of those calls—and there were weeks at a time when Mother did not inquire about scheduling visitation. The trial court reasoned that if Mother cannot consistently participate in short video calls with Child, it is "unlikely that Mother will be able to provide consistent care and supervision of the Child on a full[-]time basis." Appellant's App. Vol. II at 21. Furthermore, although Mother later made efforts to resume visitation and gain custody of Child, Mother failed to appear at the hearing on her motion.

[19] At the time of the permanency hearing, Child was nearly three years old and had interacted with Mother for only a handful of hours. The evidence adduced

at the hearing indicated that Child was bonded to his pre-adoptive foster parents and thriving in their care. Further, the Guardian Ad Litem and two FCMs who worked on the case recommended terminating the parent-child relationship.

[20] We conclude that the challenged finding was supported by sufficient evidence.

# Conclusion

[21] DCS presented clear and convincing evidence that terminating the parent-child relationship is in Child's best interests.

[22] Affirmed.

Baker, J., and Altice, J., concur.